UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JWAUN POINDEXTER,              )<br>                                                 )<br>            Plaintiff,                     )<br>                                                 )<br>       v.                                      )    No. 1:22-cv-00156-JMS-CSW<br>                                                 )<br>D. REAGLE, et al.,                   )<br>                                                 )<br>            Defendants.              ) | |

**Order Granting Defendants' Motion for Summary Judgment**

Jwaun Poindexter, who is in custody in the Indiana Department of Correction, brought this action alleging that the defendants were deliberately indifferent to the unsanitary conditions and the risk of Covid-19 infection in the segregated housing unit at Pendleton Correctional Facility. The defendants have moved for summary judgment on all claims. Because no reasonable jury could find an Eighth Amendment violation based on the Covid-19 claims, and because the defendants are entitled to qualified immunity on the unsanitary conditions claims, the motion for summary judgment, dkt. [33], is **granted**.

### I.      Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 572-73 (7th Cir. 2017).

## II.     Factual Background

Because the defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

### A.     The Parties

Mr. Poindexter is and was at all times relevant to the complaint incarcerated in the Indiana Department of Correction. He was assigned to segregated housing at Pendleton Correctional Facility for two relevant stretches: from August 20 through September 17, 2021, and from May 7 through August 9, 2022. Dkt. 34-2.

At all relevant times, Dennis Reagle was Warden and Defendant Alsip was a Deputy Warden at Pendleton Correctional Facility. Dkt. 34-6, ¶ 2; dkt. 12 at 2; dkt. 35 at 2. At all relevant times, Jim Boldman was a Captain and Defendant Pfleeger[1] was a Lieutenant stationed in the segregated housing unit at Pendleton. Dkt. 34-3, ¶ 2; dkt. 34-1 at 10:19−21.

### B.  Cell and Shower Conditions

Until August 2021, the prison employed inmates as "range runners" to distribute cleaning supplies, including brooms, mops, and toilet brushes, for inmates in segregated housing to clean their own cells. Dkt. 34-1 at 12:21−15:23. But inmates were misusing the cleaning tools, including using them as weapons or to engage in sexual activity. Dkt. 34-3, ¶ 6. So about one week after Mr. Poindexter's arrival in segregated housing, the Unit Team—which included Warden Reagle, Captain Boldman, and Lieutenant Pfleeger—ended the distribution of most cleaning supplies. *Id.*

Under the new cleaning protocol, prison staff distributed sponges to inmates in the segregated housing unit. *Id.*, ¶ 7. Once per week, staff would spray the sponges with cleaning solution to allow inmates to clean their cells. *Id.* Staff would provide replacement sponges upon request. *Id.* At all times, inmates had access to clean running water in their cells. *Id.*

Warden Reagle asserts under penalty of perjury that, at all times relevant to Mr. Poindexter's complaint, range workers were assigned to clean the shower area three times per week. Dkt. 34-6, ¶ 7.

---

[1] The complaint identified this defendant as "Pflieger." The Court now adopts the defendants' spelling, "Pfleeger." *See* dkt. 35 at 2.

Mr. Poindexter asserts that whenever he was taken to the shower, there were discarded razors and blood on the wall from the last inmate who had used the shower. Dkt. 39 at 2.[2] He also asserts that he was "potentially exposed . . . to Covid-19, [tuberculosis], and-or-Hepatitis." *Id.* at 4. He does not assert that the shower conditions actually caused him to contract any illness or suffer any injury.

Mr. Poindexter asserts that he attempted to contact or notify all defendants about the unsanitary conditions. *Id.* at 3.

### C. Covid-19 Protocols

At all times relevant to the complaint, Pendleton followed Covid-19 policies established by the Indiana Department of Correction. These policies included distribution of face coverings for inmates, mask mandates when required by the State of Indiana, temperature screening for staff entering the housing unit, quarantining of inmates who tested positive for Covid-19, screening of inmates who were transferred into the segregated housing unit, access to Covid-19 tests, availability of the Covid-19 vaccine, and social distancing where possible. Dkt. 34-3, ¶ 10. Captain Boldman supervised staff compliance with mask mandates and corrected officers who failed to comply—which did sometimes happen. *Id.*, ¶ 11.

---

[2] Mr. Poindexter attested to the truth of the factual statements in his summary judgment response under penalty of perjury. Dkt. 39 at 15. The defendants argue that the Court should disregard Mr. Poindexter's affidavits under the "sham affidavit" rule because Mr. Poindexter testified in his deposition that he could not recall most of the circumstances related to his complaint. *See, e.g.*, dkt. 34-1 at 24:23−26:25 (Mr. Poindexter reporting that he could not recall whether he had access to a sponge, soap, and running water); *id.* at 33:20−34:2 (Mr. Poindexter "Plead[ing] the Fifth" when asked if he suffered any injuries as a result of the alleged sanitation issues); *id.* at 30 (Mr. Poindexter answering, "Not really" when asked, "But are you willing to answer my questions about your complaint today based on your current memory without referring me to your complaint?"). Mr. Poindexter's deposition behavior was unacceptable and a waste of resources. However, the Court need not address the defendants' sham affidavit argument, as it is unnecessary to resolve the motion for summary judgment.

Mr. Poindexter asserts that masks were not always passed out monthly, that staff did not always wear masks "whether the State of Indiana was in a mask mandate or otherwise," and that he was not screened for Covid-19 when he was transferred to the segregated housing unit. Dkt. 39 at 8. Mr. Poindexter asserts that he attempted to contact or notify all defendants about the risks of Covid-19 spread. *Id.* at 3.

### III.   Discussion

The defendants argue for summary judgment on three grounds: (1) lack of personal involvement in the alleged deprivations, (2) lack of deliberate indifference, and (3) qualified immunity as to the unsanitary conditions of confinement claim only. The Court agrees that the defendants are entitled to qualified immunity on the claims of unsanitary conditions and that no reasonable jury could find the defendants were deliberately indifferent to the risk of Covid-19 based on the designated evidence.

#### A.   Legal Standards

Qualified immunity protects government officials from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" at the time that the conduct occurred. *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In considering a qualified immunity defense, courts evaluate "(1) whether the facts, taken in the light most favorable to the plaintiff[ ], show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009).

Clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Qualified immunity applies unless the specific contours of the

right "were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly stablished.'" *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

While "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate," *White v. Pauly*, 580 U.S. 73, 79 (cleaned up). Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015).

It was clearly established by August 2021 that, under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021). And it was clearly established that sufficiently unsanitary conditions are inhumane. *See Taylor v. Rojas*, 592 U.S. 7, 7−8 (2020) (per curiam) (no qualified immunity where plaintiff alleged that he was held for nearly four days in a cell with "massive amounts of feces all over the floor, the ceiling, the window, the walls, and even packed inside the water faucet" and then another two days in a cell where he was "left to sleep naked in sewage") (cleaned up)).

A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in

6

the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (cleaned up).

### B. Unsanitary Conditions

The Court need not—and does not—decide whether the unsanitary conditions Mr. Poindexter alleges might violate the Eighth Amendment. Even viewing the evidence in the light most favorable to Mr. Poindexter, the defendants are entitled to qualified immunity because he has not shown that "every reasonable official would have understood" that his conditions of confinement violated the Eighth Amendment.

It is undisputed that Mr. Poindexter did not have access to a mop, broom, or toilet brush for most of his time in segregated housing. *See* dkt. 34-3, ¶ 6. But it is also undisputed that he did have access to clean running water and a sponge that was weekly sprayed with cleaning solution. *Id.*, ¶ 7. The Court does not hold that such meager cleaning supplies were enough to satisfy the Eighth Amendment. But Mr. Poindexter points to no precedent to put the defendants on notice that these supplies were inadequate. Indeed, the Seventh Circuit has "recognized Eighth Amendment violations where prisoners are deprived of cleaning supplies and running water only in extreme circumstances." *Gray v. Hardy*, 826 F.3d 1000, 1005−06 (7th Cir. 2016) (collecting cases, all of which involved lack of running water).

Similarly, Mr. Poindexter has not identified any precedent to put the defendants on notice that thrice-weekly shower cleaning was insufficient to satisfy the Eighth Amendment. *See* dkt. 34-6, ¶ 7; *Carrico v. Vanihel*, 23-1381, 2023 WL 7015274, at *3 (7th Cir. Oct. 25, 2023) (affirming dismissal of Eighth Amendment claim despite allegation of unsanitary showers).

The defendants are therefore entitled to qualified immunity on Mr. Poindexter's claims of unsanitary conditions.

### C.   Covid-19

The defendants do not dispute that Covid-19 presented a serious risk to Mr. Poindexter's health. They argue only that no reasonable jury would find they were deliberately indifferent to that risk. The Court agrees.

Pendleton implemented reasonable policies to prevent the spread of Covid-19, including temperature screening for staff, mandatory face coverings when required by the State of Indiana, quarantining of inmates with new housing assignments, testing, vaccines, and social distancing. Dkt. 34-3, ¶ 10. Even taking as true Mr. Poindexter's assertion that some of these policies were "[n]ot always" followed, dkt. 39 at 8, that is not enough to convince a reasonable jury that any defendant was deliberately indifferent. *See Hunter v. Mueske*, 73 F.4th 561, 567 n.1 (7th Cir. 2023) (failure to comply with prison policy does not necessarily give rise to Eighth Amendment claim).

Because no reasonable jury could find from the designated evidence that any defendant was deliberately indifferent to Mr. Poindexter's risk of contracting Covid-19, the defendants are entitled to summary judgment on this claim.[3]

### IV.   Conclusion

The defendants' motion for summary judgment, dkt. [33], is **granted**. Final judgment in accordance with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 2/20/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[3] There is also no evidence in the record that Mr. Poindexter actually contracted Covid-19 while in the segregated housing unit at Pendleton. This alone would be sufficient grounds for summary judgment in the defendants' favor. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) ("[Plaintiff's] claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort (an Eighth Amendment violation) without then developing evidence of a recoverable injury."); *see* Fed. R. Civ. P. 56(f) (authorizing court to grant summary judgment on grounds not raised by a party, after giving notice and time to respond).

Distribution:

All ECF-registered counsel of record via email

JWAUN POINDEXTER
149218
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only